Filed 11/18/14  P. v. Lohrke CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LARRY LOHRKE,<br><br>        Defendant and Appellant. | B253526<br><br>(Los Angeles County<br>Super. Ct. No. NA093477) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge. Affirmed.

James M. Crawford for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Defendant Larry Lohrke appeals from a judgment of conviction entered after a jury found him guilty of second degree burglary (Pen. Code, § 459). The trial court suspended imposition of sentence and placed Lohrke on three years formal probation on the condition he serve 90 days in county jail. Lohrke's sole contention is that the trial court abused its discretion in admitting evidence of an uncharged crime of attempted burglary (Evid. Code,[1] § 1101, subd. (b)). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The August 2012 Incident at Home Depot*

On August 14, 2012, in the afternoon, Maria Cardena, a cashier supervisor at the Home Depot store in Signal Hill, saw Lohrke approach a self-checkout register with two toilets on a flat cart, even though the registers operated by cashiers were all open. Cardena directed another cashier to assist Lohrke by scanning the toilets at the self-checkout register. Lohrke then asked if he could leave the toilets there while he used the restroom, and the cashier agreed.[2] Lohrke returned 15 minutes later, retrieved the cart from behind the register, and left the store with the two toilets.

Cardena noticed a second flat cart sitting near the register of a cashier named Melissa Lacey. On the cart were two toilets identical to those Lohrke had just purchased. Cardena asked Lacey about the toilets. Lacey told Cardena that the toilets belonged to a woman who said she had purchased them earlier and produced a receipt from the self-checkout register. Lacey said the woman then paid for a drink and a third toilet at

---

[1]    All undesignated statutory references are to the Evidence Code.

[2]    The People played for the jury a video of Lohrke at the self-checkout register and his interaction with the cashier.

Lacey's register before leaving to look for her ride. The woman told Lacey she would be back.[3]

The woman returned, and Cardena watched her make two trips, each time pushing one of the carts to the loading zone outside the store. The woman then grabbed both carts, one carrying a single toilet and the other carrying two toilets, and headed for the parking lot. Cardenas and her supervisor, Leonorilda Jimenez, followed the woman to the parking lot and saw Lohrke drive up in a pickup truck and park next to the woman. In the bed of his truck were two toilets.

Cardena and Jimenez approached the woman and asked to see receipts for the three toilets. The woman showed them two receipts, one for the single toilet she had purchased with the drink at Lacey's cash register and one for two toilets that she had purchased at the self-checkout register. Cardena told the woman she knew the receipt from the self-checkout register did not belong to her because it was for the two toilets Lohrke had bought. The woman appeared nervous and began searching through her purse, while Lohrke began loading the three toilets into his truck. Cardena and Jimenez asked Lohrke for his receipt for the two toilets on the truck and explained why they wanted to see the receipts. Lohrke did not respond. He appeared nervous, avoided eye contact, and never spoke while he continued loading the toilets into the truck.

Cardena wrote down Lohrke's license plate number. The woman did not get into Lohrke's pickup truck but walked to another car. When Lohrke finished loading his truck, there were five toilets in the truck bed. Lohrke got into the truck and drove away, having never spoken to Cardena, Jimenez, or the woman. Neither Lohrke nor the woman ever produced a receipt for the two additional toilets the woman claimed to have purchased that afternoon.

---

**3** The People also played for the jury a video of the woman with the toilets at Lacey's register and Cardena talking to Lacey about the woman.

B.      *Lohrke's Version of the August 2012 Incident at Home Depot*

Lohrke testified at trial in his defense and gave a different version of the events of August 14, 2012.  Lohrke testified that he was with his friend Jose Hernandez, who needed help repairing his truck.  At some point two women and a man approached Lohrke and offered to pay Lohrke $50 if he would take them to Home Depot to buy two toilets that would not fit in their car.  Lohrke agreed to buy the toilets for them, but not to drive them, because he did not want to have to wait until the three of them finished shopping for other items.  The three individuals gave Lohrke $300 and a written description of the toilets they wanted him to buy for them.

Lohrke drove his pickup truck to the Home Depot store alone, selected two toilets, placed them on a cart, and purchased them at the self-checkout register, paying with the $300 the three individuals had given him.  Lohrke pushed the cart into the parking lot and found one of the two women who had paid him to buy the toilets.[4]  The woman asked Lohrke to give her the receipt and the change from the purchase so she could buy other items.  Lohrke complied and loaded the toilets into his truck and drove back to where Hernandez was working on his truck.

When Lohrke arrived, he did not unload the toilets because the second woman told him he had to return to the Home Depot store to pick up the other woman who had finished her shopping.  Lohrke returned to the Home Depot parking lot and saw the woman pushing two flat carts with the three toilets on them.  Lohrke also noticed several Home Depot store employees behind the woman asking her questions.  The employees asked Lohrke for a receipt for the two toilets in his truck, and Lohrke told them that the woman had the receipt.  Lohrke loaded the three additional toilets onto his pickup truck and offered the woman a ride.  She accepted, and Lohrke drove away.

---

[4]      Lohrke testified on cross-examination that, after paying for the two toilets, he left them on the flat cart by the self-checkout register and walked away for about 15 minutes, although he was not sure where he went during that time.

After returning to Hernandez and his truck, Lohrke and the two women unloaded the toilets from Lohrke's pickup truck to a truck that the women now had. One of the women gave Lohrke $50 and thanked him for his help. Lohrke finished helping Hernandez repair his truck and left.

Hernandez testified at trial and corroborated Lohrke's account. Hernandez added that he did not know the three individuals who had paid Lohrke to go to the Home Depot store.

C.    *The Prior Incident at Home Depot*

Jimenez had seen Lohrke in the Home Depot store before, around noon on a Saturday in July 2012.[5] At the time she observed Lohrke push a cart to the hardware department, select a box of power tools and place it in a cart, and then push the cart to the lumber department, where he left it. Lohrke then retrieved a second cart, in which he placed a cabinet, and left that cart in a different location in the lumber department. Lohrke next picked up a white box containing an attic vent and placed it in a third cart. Jimenez observed Lohrke for two hours while he walked back and forth among the three carts, moved them around the store, and gathered more merchandise. Lohrke refused offers of assistance from Jimenez and other store employees. The last time Jimenez saw Lohrke, he was in the garden department pushing a cart loaded with the merchandise he had initially distributed among the three carts. Lohrke opened the white box, took out the attic vent, and replaced it with some Home Depot drills. He then pushed the cart to the self-checkout register and left it there with all of the merchandise he had gathered. Lohrke bought a soda at the self-checkout register and walked out of the store.

After Lohrke had left the Home Depot store that day, Jimenez went to one of the carts Lohrke had been using and opened the cabinet and the white box. She discovered merchandise, including faucets and drills, hidden inside the containers.

---

[5]    Lohrke denied that he had been at the Home Depot store on any Saturday in July 2012.

D.     *The Admission of the July 2012 Incident*

Before trial, the People moved to admit the testimony of Jimenez concerning the July 2012 incident at Home Depot, which the People described as an uncharged attempted burglary.  The People offered the evidence under section 1101, subdivision (b), to show that Lohrke had a common plan and intent in committing the August 2012 charged burglary and the July 2012 attempted burglary.  The trial court ruled the evidence was admissible only to prove Lohrke's intent in entering the Home Depot store on August 14, 2012.  The court found that the circumstances of the two crimes were too distinct to reflect the existence of a common plan.  The court also found that the probative value of the evidence of the attempted burglary substantially outweighed the risk of undue prejudice (§ 352).

The court later instructed the jury, pursuant to CALJIC No. 2.50, that "[e]vidence has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial.  [¶]  This evidence, if believed, may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes.  It may be considered by you only for the limited purpose of determining if it tends to show:  [¶]  The existence of the intent which is a necessary element of the crime charged. . . ."

**DISCUSSION**

A.     *Applicable Law*

""""Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes.  (. . . § 1101.)  Evidence of uncharged crimes is admissible to

6

prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.  [Citation.]"  [Citation.]'"  (*People v. Rogers* (2013) 57 Cal.4th 296, 325-326; see *People v. Jones* (2012) 54 Cal.4th 1, 49 ["[a]lthough evidence of prior criminal acts generally is inadmissible to show bad character, criminal disposition, or probability of guilt, such evidence may be admissible when relevant to prove some material fact other than the defendant's general disposition to commit such an act"].)[6]  "A person's own prior misconduct may be admissible to show that the charged offense is so similar as to support an inference that the same person committed both acts, or to show that in light of the prior conduct the person must have harbored a similar intent or motive during the charged offense."  (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1258.)  "'On appeal, we review a trial court's ruling under . . . section 1101 for abuse of discretion.'  [Citation.]"  (*People v. Jones* (2013) 57 Cal.4th 899, 930.)

Finally, "[i]f evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent, common plan, or identity, the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (. . . § 352.)'  [Citation.]"  (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  We review rulings under section 352 for abuse of discretion.  (*People v. Rogers*, *supra*, 57 Cal.4th at p. 326.)

---

**6**     Section 1101, subdivision (a), provides:  "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  Section 1101, subdivision (b), provides:  "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ."

B.       *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence*
         *of the Uncharged Attempted Burglary*

Burglary "requires an entry into a specified structure with the intent to commit theft or any felony." (*People v. Tafoya* (2007) 42 Cal.4th 147, 170; see Pen. Code, § 459.) Emphasizing the differences between the uncharged attempted burglary in July 2012 and the charged burglary in August 2012, Lohrke argues that the trial court abused its discretion in admitting evidence of the attempted burglary to prove his intent under section 1101, subdivision (b). Specifically, Lohrke argues that the attempted burglary involved a lone perpetrator who hid small merchandise inside packaging or large merchandise, none of which left the store. Indeed, Lohrke argues that the July 2012 incident is not simply uncharged, but is unchargeable; no crime was committed, no merchandise was ever removed from the store. In contrast, the August 2012 burglary involved a second perpetrator or accomplice who left the store with merchandise too large to be concealed and for which she did not have a receipt.

Lohrke's argument, however, is directed to the prosecutor's claim that the uncharged attempted burglary and the charged burglary shared a common plan within the meaning of section 1101, subdivision (b). The trial court agreed with Lohrke and rejected this claim by the prosecutor, and admitted the prior incident under section 1101, subdivision (b), only to prove intent. "'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] "[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish . . . the presence of the normal, i.e., criminal, intent accompanying such an act . . . ." [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.' [Citations.]" [Citation.]' [Citations.]" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1096-1097.)

Here, the crimes were sufficiently similar, as far as each progressed, to support the inference that Lohrke had the intent to steal in each instance. The July 2012 attempted

8

burglary and the August 2012 burglary occurred at the same store, the same approximate time of day, and one month apart. On both occasions, rather than simply grabbing some merchandise and leaving the store without paying for it, Lohrke, first alone and then with an accomplice, used carts to collect and transport merchandise, and proceed to (although, in the first instance, not through) the self-checkout register rather than an available cashier-operated register. The evidence was admissible under section 1101, subdivision (b). The evidence was also admissible under section 1101, subdivision (c), to attack Lohrke's credibility and the plausibility of his testimony at trial that he had had no intent to steal anything but was buying the toilets for someone else. (See § 1101, subd. (c) ["[n]othing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness"]; *People v. Abel* (2012) 53 Cal.4th 891, 928 [section 1101, "subdivision (a)'s restriction on the use of character evidence has no application when the evidence is offered on the issue of a witness's credibility"].)

Citing an example in a footnote in the Supreme Court's opinion in *People v. Ewoldt* (1994) 7 Cal.4th 380, Lohrke also argues that "for the element of intent to be relevant under section 1101, the underlying act is conceded or assumed," so that evidence of prior uncharged conduct is admissible only where the defendant admits the act but denies having the requisite intent. Lohrke misreads the *Ewoldt* opinion. The Supreme Court wrote in *Ewoldt*: "Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense. 'In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it.' [Citation.] For example, in a prosecution for shoplifting in which it was conceded or assumed that the defendant left the store without paying for certain merchandise, the defendant's uncharged similar acts of theft might be admitted to demonstrate that he or she did not inadvertently neglect to pay for the merchandise, but rather harbored the intent to steal it." (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 394, fn. 2.) The Supreme Court used this "example" to show the "subtle but significant" distinction between "use of evidence of uncharged acts to establish the existence of a common design or plan as opposed to the use of such evidence to prove

9

intent or identify . . . ." (*Ibid.*) The Supreme Court was not creating a requirement that evidence of uncharged prior acts is only admissible where the defendant concedes he or she committed the underlying acts. As the Supreme Court recently stated in *People v. McCurdy*, *supra*, 59 Cal.4th at page 1097, "The admission of evidence of the perpetrator's intent requires neither the defendant to concede identity nor the trial court to assume that the defendant committed both sets of acts. There must be sufficient evidence for the jury to find defendant committed both sets of acts, and sufficient similarities to demonstrate that in each instance the perpetrator acted with the same intent or motive."

Finally, the trial court did not abuse its discretion in determining that the uncharged prior conduct was admissible under section 352. The July 2013 incident was probative on the crucial issues of intent and credibility. The evidence helped the prosecution and therefore was prejudicial to Lohrke's defense, but not unduly so. Indeed, Lohrke does not identify any particular prejudice, but argues only that the evidence of the "prior incident was not probative to prove intent." The trial court also gave the jury an instruction that limited the jury's use of the evidence to the issue of intent. (See *People v. Hendrix* (2013) 214 Cal.App.4th 216, 247 ["[a] limiting instruction can ameliorate section 352 prejudice by eliminating the danger the jury could consider the evidence for an improper purpose"].) The trial court did not abuse its discretion under section 352 in admitting, with an appropriate limiting instruction, evidence of Lohrke's uncharged prior attempted burglary.

## DISPOSITION

The judgment is affirmed.


SEGAL, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.